UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JEFFREY L. HARDWICK )
) No. CV-10-0014-CI
Plaintiff, )
) ORDER DENYING PLAINTIFF'S
v. ) MOTION FOR SUMMARY JUDGMENT
) AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner ) MOTION FOR SUMMARY JUDGMENT
of Social Security, )
)
Defendant. )
)

BEFORE THE COURT are cross-Motions for Summary Judgment (ECF No. 13, 15.) Attorney Maureen J. Rosette represents Jeffrey L. Hardwick (Plaintiff); Special Assistant United States Attorney Mathew W. Pile represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 8.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on August 24, 2005. (Tr. 14, 98, 457.) He alleged disability due to a right knee impairment, with an onset date of February 1, 2004. (Tr. 101-02.) His claim was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on November 14, 2007, before ALJ John Crickman. Plaintiff,

who appeared with counsel, and vocational expert Sharon N. Welter testified. (Tr. 600-649.) The ALJ determined a supplemental psychological evaluation was needed to develop the record further. (Tr. 644.) The new evidence was submitted to the ALJ on or about May 27, 2008. (Tr. 460-74.) On September 3, 2008, the ALJ denied benefits; the Appeals Council denied review. (Tr. 14-30, 4-6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 41 years old, single, and living with a friend in a hotel room. (Tr. 608, 614.) Plaintiff had a high school education and past work experience as an office assistant, bench grinder, stock clerk, solicitor, and telephone solicitor/customer service representative. (Tr. 82, 102, 640.) He reported his longest job was as an office assistant, which required lifting no more than ten pounds, walking one hour a day, standing one hour a day, sitting six hours a day, and no stooping, kneeling, crouching, reaching or crawling. He indicated he supervised 25-30 people. (Tr. 103.) He testified he had a full right knee replacement in May 2005, (Tr. 127), and he has fallen many times since then due to his weak knee. (Tr. 631.) Plaintiff has a significant history of alcohol abuse, but testified he cut down because of his knee problems and now drinks "once in a while." (Tr. 613-14.) He reported he is unable to sit for more than ten minutes without moving to stretch his knee. (Tr. 634.) He testified he can stand about ten minutes, walk about two and a half blocks, and lift

and carry about five to seven pounds. (*Id*.)  He stated he could climb up stairs, but coming down stairs was a problem. (Tr. 636.) In addition to physical limitations due to his weak knee, Plaintiff said he is unable to remember anything.  (Tr. 611.)

### ADMINISTRATIVE DECISION

After summarizing the disability determination process used where there is medical evidence of a substance abuse disorder (20 C.F.R. §§ 404.1535, 416.935), the ALJ proceeded with the first of two sequential evaluations: one with the effects of alcohol abuse and one without the effects of alcohol abuse. (Tr. 15-16.)  At step one, ALJ Crickman found Plaintiff had not engaged in substantial gainful activity since February 1, 2004, the alleged onset date. (Tr. 17.)  At step two, he found Plaintiff had the severe impairments of "right knee degenerative joint disease, status-post total right knee replacement in May 2005, and alcohol abuse." (*Id*.) In detailed findings, the ALJ determined the following conditions reported in the record were either non-severe or not established by the evidence: head injury, memory impairment, borderline intellectual functioning, depression, anxiety, somatoform disorder, and autistic disorder.[1]  (Tr. 17-20.)

---

[1]  It appears the January 2008 psychological evaluation signed by Jackie Hook, M.A., in which depression and an "autistic spectrum disorder" are diagnosed, relates to a different claimant and does not belong in Plaintiff's administrative record.  (Tr. 475-78.) Therefore, the ALJ's findings relating to this report will not be reviewed on appeal.

At step three, he determined Plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listings). (Tr. 20.)   At step four, considering effects of the documented alcohol abuse, the ALJ found Plaintiff had the following physical residual functional capacity (RFC):

> [He can] lift and carry 20 pounds occasionally, stand and walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  He can never climb ladders, ropes, and scaffolds.  He needs to avoid concentrated exposure to hazards.

(Tr. 21.)

Regarding Plaintiff's mental RFC, the ALJ found "due to alcoholism, [Plaintiff] cannot sustain basic work activities eight hours per day and five days per week." *Id*.  After discussing Plaintiff's testimony and symptom allegations, the ALJ found Plaintiff's statements regarding physical limitations attributable to his impairments were not credible.   (Tr. 22.)   In making credibility findings, the ALJ specifically referenced evidence in the record that reflects Plaintiff's "significant problems with alcohol abuse."   (Tr. 23-24.)   He also referenced affirmative evidence of malingering and exaggeration of symptoms.  (Tr. 24.) Having found Plaintiff unable to sustain basic work activities due to alcohol abuse, the ALJ concluded Plaintiff could not perform past work or other jobs in the national economy and was, therefore, disabled.  (Tr. 27.)

In the second sequential evaluation, without the effects of alcohol abuse, the ALJ found Plaintiff would still have the severe right knee impairment but no mental impairment. (Tr. 28.) He found

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1  Plaintiff's impairment or combination of impairments without alcohol
2  abuse would not meet the Listings.   (*Id.*)   At step four, ALJ
3  Crickman determined that if Plaintiff stopped the alcohol abuse, he
4  would have no mental limitations and the ability to perform
5  sedentary to light work.   (*Id.*)   Considering a RFC without the
6  effects of alcohol abuse and vocational expert testimony, the ALJ
7  found if Plaintiff stopped abusing alcohol, he could perform his
8  past work as an office worker and telephone solicitor.   (Tr. 29.)
9  Proceeding to step five, he found the ALJ could perform a full range
10 of unskilled sedentary work, and was therefore not disabled.   (*Id.*)
11 He concluded Plaintiff's substance abuse is a "contributing factor
12 material to disability," and therefore, Plaintiff has not been
13 "disabled" as defined by the Social Security Act through the date of
14 the decision.   (Tr. 29-30.)

15                              **STANDARD OF REVIEW**

16      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the
17 court set out the standard of review:

18         A district court's order upholding the Commissioner's
        denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
19      211 F.3d 1172, 1174 (9th Cir. 2000).   The decision of the
        Commissioner may be reversed only if it is not supported
20      by substantial evidence or if it is based on legal error.
        *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
21      Substantial evidence is defined as being more than a mere
        scintilla, but less than a preponderance.   *Id.* at 1098.
22      Put another way, substantial evidence is such relevant
        evidence as a reasonable mind might accept as adequate to
23      support a conclusion.   *Richardson v. Perales*, 402 U.S.
        389, 401 (1971).   If the evidence is susceptible to more
24      than one rational interpretation, the court may not
        substitute its judgment for that of the Commissioner.
25      *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
        Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
26
        The ALJ is responsible for determining credibility,
27      resolving conflicts in medical testimony, and resolving
        ambiguities.   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
28      Cir. 1995).   The ALJ's determinations of law are reviewed

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

*de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL EVALUATION PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION IN THE CONTEXT OF DRUG AND ALCOHOL ABUSE**

The Contract with America Advancement Act of 1996 (CAAA) amended the Social Security Act, providing that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Special statutes and regulations govern disability claims that involve substance abuse.

Under the Regulations implemented by the Commissioner, the ALJ must follow a specific analysis that incorporates the sequential evaluation discussed above. 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ first must conduct the five-step inquiry without attempting to determine the impact of a substance abuse disorder. If the ALJ finds that the claimant is not disabled under the five-step inquiry, the claimant is not entitled to benefits, and there is no need to proceed with further analysis. *Id.* If the ALJ finds the claimant disabled, and there is evidence of substance abuse, the ALJ should proceed under the sequential evaluation and §§ 404.1535 or 416.935 to determine if the claimant would still be disabled absent the substance abuse. *Bustamante v. Massanari,* 262 F.3d 949, 955 (9th

Cir. 2001). If found disabled with the effects of substance abuse, the claimant has the burden in steps one through four of the second sequential evaluation process to prove drug or alcohol abuse is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

As stated by the *Parra* court, "An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated." *Id.* at 750. Thus, through the CAAA, Congress seeks "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Id.* at 749; *Ball v. Massanari*, 254 F.3d at 817, 824 (9th Cir. 2001). Plaintiff must provide competent evidence of a period of abstinence and medical source opinions relating to that period sufficient to establish his alcoholism is not a contributing factor material to his alleged mental impairments and disability. *Parra*, 481 F.3d at 748-49.

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff asserts he has presented substantial evidence that he is more limited physically and psychologically than determined by the ALJ. Specifically, he argues the ALJ erred when: (1) he improperly rejected the opinions of examining psychologist, M. Scott Mabee Ph.D., at step two; (2) he found Plaintiff did not have a severe mental impairment without the effects of alcohol; and (3) he improperly rejected the opinions of physician's assistant K. Michele Treece at step four when assessing Plaintiff's physical RFC. (ECF

No. 14 at 12-18.)

**DISCUSSION**

**A.    Step Two Mental Impairments - With and Without Alcohol Abuse**

At step two of the sequential evaluation, the ALJ determines whether a claimant suffers from a "severe" impairment, *i.e.,* one that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. §§ 404.1508, 416.908.  In addition, the impairment must last, or be expected to last, for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1509, 416.909 (durational requirement).  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling" as defined by the Social Security regulations.  *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

A mental impairment generally is considered not severe if the degree of limitation in the functional areas of activities of daily living; social functioning; and concentration, persistence or pace is rated as "none" or "mild" and there have been no episodes of decompensation. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

As discussed above, where drug or alcohol abuse is a consideration, the Commissioner must evaluate mental impairments

with and without the effects of substance abuse in the step two analysis. *Bustamante*, 262 F.3d at 955. Where disabling mental impairments are established with the effects of substance abuse the "claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor to his disability." *Parra,* 481 F.3d at 748.

In determining whether a claimant's impairments are severe at step two, the ALJ evaluates medical evidence submitted and explains the weight given to the opinions of acceptable medical sources in the record. *Social Security Ruling* (*SSR*) 85-28. If the medical source is an examining or treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting an uncontradicted opinion. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the opinion is contradicted, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043. Where a medical source opinion is based primarily on a claimant's self-reported symptoms, credibility is an appropriate factor to consider in the evaluation of medical evidence at step two. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

**1.  Medical Evidence of Mental Impairment**

Here, medical evidence shows that in January 2006, Dr. Scott Mabee examined Plaintiff and diagnosed mental disorder, NOS, due to general medical condition - cranial bleeding (patient reported) and personality disorder, NOS. His opinions were based on an interview, mini-mental status exam, and psychological testing. No prior

records were reviewed, and Dr. Mabee made no mention of significant or ongoing alcohol abuse. Plaintiff reported he had a history of alcohol abuse, but "drinks socially on a limited basis." (Tr. 402, 404, 406.) In his narrative report, Dr. Mabee opined that "it was very possible that Mr. Hardwick may well experience difficulty with his memory and cognitive functioning, given his self-reported history of cranial injuries." (Tr. 406.) In the summary evaluation form, Dr. Mabee assessed moderate cognitive and social functional limitations, which he estimated would persist for six to twelve months. (Tr. 402-03.) Given Plaintiff's self-report of brain trauma, Dr. Mabee recommended a neurological evaluation. (Tr. 03.)

In March 2007, Plaintiff was examined by Dr. Charles Brondos, neurologist. (Tr. 361-66.) Dr. Brondos reported Plaintiff had a "significant history of alcohol abuse," and demonstrated memory problems in his mini-mental status exam. (Tr. 361-62.) He noted Plaintiff had had a "significant head injury in the past with a hemorrhage," but a review of imaging reports from December 2006 showed resolution of the hemorrhage and some cerebral and cerebellar atrophy. (Tr. 361.) Dr. Brondos opined Plaintiff's cerebellar atrophy was "presumably from alcohol use," and recommended a neuropsychological evaluation to assess the alleged memory problems. (Tr. 362.)

After the November 2007 hearing, the ALJ ordered a psychological evaluation from Psychological Services Spokane to assess Plaintiff's alleged memory deficits, reported seizure disorder, and alcohol addiction. (Tr. 644, 461-74.) In May 2008, Plaintiff completed a personal information form and was interviewed

and given a mini mental status exam by Frank Rosekrans, Ph.D. *Id*. Dr. Rosekrans also administered and interpreted several objective tests to assess neurological and intellectual functioning. *Id*. Dr. Rosekrans reported test scores and self-report evidenced exaggeration of symptoms, malingering, and misrepresentation of alcohol use. (Tr. 26, 468-69.) He opined that even with invalid scores, intelligence tests did not indicate borderline intelligence, memory impairment or mental functional limitation due to neurological impairment. Regarding the diagnosed personality disorder, Dr. Rosekrans found, "It would be highly unusual to develop disabling personality disorders after 9 years of successful work." (Tr. 469.) He concluded most of Plaintiff's disabilities were alcohol-related, but he did not find "any serious impairment of ability to work." (Tr. 25, 469.)

**2.   Evaluation of  Dr. Mabee's Psychological Evaluation**

Citing evidence from Dr. Brondos' March 2007 neurological evaluation, Plaintiff argues the ALJ erred in rejecting Dr. Mabee's January 5, 2006, diagnoses of personality disorder, NOS and "mental disorder, NOS, due to cranial bleeding (patient reported)." (ECF No. 14 at 13.) He asserts that if properly credited, Dr. Mabee's evidence would establish a severe mental impairment, requiring reversal of the ALJ's decision and remand. (*Id*. at 15-17.) However, review of the record in its entirety shows the ALJ properly explained the weight given to Dr. Mabee's report and gave legally sufficient reasons for rejecting his diagnoses.

At step two, the ALJ summarized the medical evidence submitted and specifically addressed Dr. Mabee's diagnoses. He found

Plaintiff's documented hemorrhage due to head injury did not last for 12 months and was, therefore, non-severe. (Tr. 17.) This finding is supported by Dr. Brondos' report and CT imaging reports. (Tr. 361.) The ALJ also discounted Dr. Mabee's diagnoses of personality disorder NOS and mental disorder NOS due to "bleeding in the brain," and explained his rejection of Dr. Mabee's opinions with these reasons: (1) psychological testing by Dr. Rosekrans revealed no organic mental disorder; (2) a CT scan in December 2006 of the brain showed a resolution of Plaintiff's brain hemorrhaging; (3) Dr. Mabee failed to diagnose or factor in evidence of ongoing alcohol abuse in his evaluation; and (4) opinions based on Plaintiff's self-report were unreliable due to a documented pattern of over-reporting of symptoms and misrepresentations. (Tr. 17-18, 24, 25-26.) These are specific, legitimate reasons for disregarding the Dr. Mabee's opinions. [2] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (*citing Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)); *Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

    It also is noted on independent review that Dr. Mabee did not

─────────────

    [2] ALJ Crickman gave "clear and convincing" reasons for finding Plaintiff's statements were not fully credible, including his documented lack of candor regarding ongoing alcohol abuse and clinical evidence of exaggerated symptoms and malingering in psychological evaluations. (Tr. 23-24, 26); *see Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) (claimant's inconsistencies and lack of candor about substance abuse support adverse credibility finding); *Morgan*, 169 F.3d at 599.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

have psychological or medical records to review as part of his examination. (Tr. 404.)  The ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, (9th Cir. 2008); *Thomas*, 278 F.3d at 957; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1989). Further, when there is conflicting medical evidence, it is the ALJ's responsibility to interpret the evidence in its entirety and resolve the conflict.  *Thomas*, 278 F.3d at 957.  In this case, the ALJ reasonably relied on the May 2008 testing results and opinions of Dr. Rosekrans, who had the advantage of a longitudinal review of medical records, emergency room reports of treatment for acute intoxication, objective psychological test results, an extensive interview and a mini-mental status exam upon which to base his conclusions. (Tr. 27, 462-74.)

Plaintiff's argument that Dr. Mabee's two-hour interview with Plaintiff renders his diagnoses valid is without merit. (ECF No. 14 at 16.) As discussed above, Plaintiff's self-report was found not credible, and psychological testing indicated malingering. (Tr. 23-24, 26.) Dr. Mabee's own report noted elevated scores in psychological testing indicating the possibility of false mental health claims and invalid data. (Tr. 405-06.) Medical opinions based on a claimant's subjective complaints are properly rejected as unreliable where the claimant's credibility has been properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  In addition, as noted by the ALJ in his credibility findings, emergency room reports in the record (unreviewed by Dr.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

Mabee and unreported by Plaintiff in the interview) document treatment for acute intoxication in November 2005, less than two months prior to Dr. Mabee's evaluation. (Tr. 229-38.) Conclusions based on Plaintiff's unreliable self-report during a two hour interview are insufficient to support step two findings of severe mental impairments. 20 C.F.R. §§ 404.1508, 416.908.

The ALJ gave legally sufficient reasons for rejecting Dr. Mabee's diagnoses and giving little weight to his opinions. The medical evidence in its entirety does not support Dr. Mabee's conclusion that Plaintiff was impaired mentally by a past head injury or a personality disorder.

### 3. Alcohol Abuse as a Contributing Factor

Even assuming Plaintiff established severe mental impairments of personality disorder NOS or memory problems in addition to the disabling alcohol abuse disorder found at step two of the first sequential evaluation, he has failed to meet his burden to show his mental impairments are not caused by the severe chronic alcohol abuse reflected throughout the medical record. *Parra*, 481 F.3d at 748. During the relevant time, examining medical sources noted acute alcohol intoxication, self-reported daily alcohol abuse, and impairments caused or exacerbated by alcohol abuse. (Tr. 174, 237-38, 362, 363, 463-64, 501.) For example, Drs. Brondos and Rosekrans referenced Plaintiff's alcohol abuse and opined his mental and psychological problems were alcohol-related. (Tr. 361-62, 469.) In March 2007, Dr. Arnold noted Plaintiff's chronic alcoholism, and Plaintiff's self-report of recent inpatient and current outpatient treatment. (Tr. 363, 365.) Emergency room reports document repeated

1   hospitalizations due to acute alcohol intoxication in 2005, 2006,
2   2007, and 2008.[3] (Tr. 229-38, 438, 487, 480-99, 501, 567.)  Because
3   Plaintiff has failed to provide evidence of prolonged abstinence or
4   severe mental impairments without the effects of the undisputed
5   alcohol abuse that limit his ability to work, he did not meet his
6   burden at step two. *Parra*, 481 F.3d at 748.   The ALJ did not err
7   in his step two evaluation and findings that without the effects of
8   alcohol abuse Plaintiff did not have a severe mental impairment.

9   **B.   Physical RFC Without the Effects of Alcohol Abuse**

10       An RFC determination represents the most a claimant can still

11   _____

12       [3]   After the ALJ rendered his decision, Plaintiff submitted
13   medical records regarding emergency room visits between August 30,
14   2007, and September 28, 2008, when he was treated for injuries
15   sustained in a pedestrian-automobile accident. (Tr. 480-594.)  These
16   records were considered by the Appeals Council (Tr. 7) and are part
17   of the record on review. *Gomez v. Chater*, 74 F.3d 967, 971 (9th
18   Cir. 1996).   Emergency room reports reflect Plaintiff was found
19   intoxicated under a bridge on August 30, 2008, and taken to the
20   hospital for evaluation. The attending physician opined his
21   subarachnoid hemorrhage was related to acute alcohol intoxication.
22   (Tr. 571.)  On September 6, 2008, Plaintiff was admitted to ER from
23   detox and diagnosed with acute alcohol intoxication.   (Tr. 567.)
24   On September 28, 2008, Plaintiff was admitted to ER after being hit
25   by a car.  At intake, he self-reported drinking alcohol daily. (Tr.
26   487.)  These records support the ALJ's finding that chronic alcohol
27   abuse is a contributing factor material to the determination of
28   disability.  (Tr. 29.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

do despite his physical and mental limitations.   20 C.F.R. §§ 404.1545, 416.945.   The RFC assessment is not a "medical issue" under the Regulations; it is based on all relevant evidence in the record, not just medical evidence.   *Id.*   At step four of the sequential evaluation without the effects of alcohol abuse, the ALJ determined Plaintiff had no mental impairments and the following physical limitations:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  He could never climb ladders, ropes and scaffolds.  He would have to avoid concentrated exposure to hazards.

(Tr. 28.)

Plaintiff argues this physical RFC is not supported by findings in a September 2005 physical evaluation signed by Dr. Craig Bone, Plaintiff's orthopedic surgeon, and Michele Treece, physician's assistant.  (ECF No. 14 at 17; Tr. 399.)  He contends the ALJ's reasons are not adequate to reject the opinions of Dr. Bone and must be credited.  He further contends remand is warranted for additional vocational expert testimony based on a new RFC.  (ECF No. 14 at 18.)  Assuming the opinions at issue are those of Dr. Bone as well as Ms. Treece, the ALJ must give "specific" and "legitimate" reasons for discounting them.[4]  *Lester*, 81 F.3d at 830-31.  The ALJ

---

[4] These opinions are contradicted by a physical RFC assessment by agency reviewing physicians; therefore, the specific and legitimate standard applies.  (*See* Tr. 203-10.)  A non-examining physician opinion is substantial evidence if supported by other

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

may meet his burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (*quoting Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (*superseded by statute on other grounds*). However, when rejecting a medical opinion, the adjudicator is not required to recite specific words.  The Ninth Circuit has held the reviewing court can read the adjudicator's summary of the evidence and findings and draw specific and legitimate inferences based on substantial evidence.  *Magallanes*, 881 F.2d at 755.

The record shows that on June 1, 2005, one month after performing a total knee replacement on Plaintiff, Dr. Bone opined Plaintiff was severely limited due to his recent surgery. (Tr. 394.) Dr. Bone expected this level of limitation to last four months, noting Plaintiff needed "at least 3 months of rehab prior to being released for *light work* activities."  (Tr. 395.)(*Emphasis added*.) Following up three months later, Ms. Treece and Dr. Bone revised the work level limitation to "sedentary level," and reported this limitation was expected to last two to four months.  (Tr. 398-99.)

ALJ Crickman specifically addressed Dr. Bone's work level opinions in his RFC findings.  (Tr. 25.)  He discounted Dr. Bone's opinion that Plaintiff was severely limited, explaining this restriction was assessed "only one month after claimant's right knee replacement."  (Tr. 25.)  Consistent with Dr. Bone's expectation that the limitation would last four months, the ALJ found this

medical evidence in the record.  *SSR* 96-6p.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

limitation: (1) did not reflect current functioning, (2) was not consistent with post-operative medical records reflecting functional improvement over time, and (3) was not consistent with Plaintiff's reported activities. (*Id.*) These are specific and legitimate reasons for discounting a treating source opinion. *See Morgan*, 169 F.3d at 602.

The ALJ also discounted the September 2005 evaluation, which the ALJ attributed to Ms. Treece. (Tr. 25.) Under the regulations, Ms. Treece is not an acceptable medical source and, therefore, is not qualified to diagnose an impairment. 20 C.F.R. §§ 404.1513(a),(d)(4), 416.913(a),(d)(4); *SSR* 06-03p. However, her opinions regarding how Plaintiff's impairments affect his ability to work must be considered and may be rejected only with specific, "germane" reasons. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Ms. Treece opined Plaintiff was restricted to sedentary work for two to four months. (Tr. 39-40.) The ALJ gave some weight to this opinion because it was four months after surgery, but he found Plaintiff's reported activities indicated he was capable of sedentary to light work. (Tr. 25.) This is a specific, germane reason for the weight given under the "other source" standard.

Assuming the sedentary limitation is Dr. Bone's opinion, this reason also is legally sufficient to reject a treating source opinion. *Morgan*, 169 F.3d at 602 (claimant's demonstrated activities inconsistent with treating psychologist's rejected opinions). Assuming *arguendo* that this one reason is not legally sufficient to reject the opinion of a treating specialist, any error is harmless.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

 *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995)(error is harmless when the correction of that error would not alter the result).

    First, the ALJ need only explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  As discussed above, the September 2005 report specifically stated the limitation to sedentary work would continue two to four months, *i.e.*, until January 2006, after which Plaintiff's ability to work should be re-evaluated.  (Tr. 399.) Therefore, the sedentary limitation assessed by Ms. Treece was not intended to apply to Plaintiff's ability to work for the entire alleged period of disability.  As explained by the ALJ in his discussion of the June 2005 report, the record shows Plaintiff was showing improvement by October 2005, when x-rays indicated a well-aligned prosthesis and intact femur, tibia and fibula shafts.  By November 2005, Plaintiff could ambulate without significant difficulty, had full range of motion, a normal sensory examination and "normal muscle strength in the lower extremities." (Tr. 22, 226, 236.)

    In his summary of the evidence, the ALJ also referenced reports that in December 2005, Plaintiff exhibited good movement in his right leg and no edema; in July 2006, Plaintiff reported he was doing fine and his examining physician noted no evidence of joint laxity and no limp in Plaintiff's gait; and emergency room reports reflect left knee mobility and flexion through June 2007.  (Tr. 22-23, 422, 432-33, 435.)  In addition, the ALJ noted Plaintiff's September 2005 Daily Activities report completed two days before Ms.

Treece's evaluation, in which Plaintiff self-reported an ability to lift up to 40 pounds, walk up to a quarter of a mile, and perform many daily activities. (Tr. 23, 95.)  The self-reported abilities are consistent with the RFC assessment confirmed by agency reviewing physician, Howard Platter, M.D., on February 9, 2006. (Tr. 203-10.) Thus, even if the September 2005 post-operative opinion limiting to Plaintiff to sedentary work through January 2006 were credited fully, the evidence in its entirety supports ALJ's RFC finding that Plaintiff could perform sedentary to light work.

Substantial evidence supports the weight given Ms. Treece's opinion that Plaintiff was restricted to sedentary level work for a period of two to four months.  Any error in the ALJ's explanation of the weight given this opinion is harmless, because the correction of the error would not alter the final determination of non-disability. The ALJ's summary of the evidence and RFC findings without the effects of alcohol abuse reflect a rational interpretation of the record in its entirety.

**CONCLUSION**

The Commissioner's denial of benefits is supported by substantial evidence and without legal error.  Plaintiff did not meet his burden of proving that he is disabled absent the effects of alcohol abuse.  Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED;**

2.  Defendant's Motion for Summary Judgment **(ECF No. 15)** is **GRANTED;**

1          3.   Judgment shall be entered for Defendant.

2          The District Court Executive is directed to file this Order and

3     provide a copy to counsel for Plaintiff and Defendant and the file

4     shall be **CLOSED**.

5          DATED May 4, 2011.

6

7                              S/ CYNTHIA IMBROGNO
                          UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22